UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gennene Graves,
individually and on behalf of others
similarly situated,

      Plaintiff,                    Civil Action No.

v.

Kellermeyer Bergensons Services, LLC,

      Defendant.

## CLASS COMPLAINT AND JURY DEMAND

Gennene Graves ("Plaintiff"), by and through her attorneys, on behalf of herself and the class set forth below, brings the following Class Action Complaint against Kellermeyer Bergensons Services, LLC ("KBS" or "Defendant").

## INTRODUCTION

1. This consumer class action is brought under the Fair Credit Reporting Act ("FCRA") against an employer who routinely violates the FCRA's basic protections by failing to provide the "stand-alone" disclosure required by the FCRA. As Defendant's practices were routine and systematic, Plaintiff asserts claims for damages on behalf of a class of similarly situated job applicants and employees.

## THE PARTIES

2. Plaintiff Gennene Graves is an individual person and a resident of Taylor, Michigan.

3. Defendant Kellermeyer Bergensons Services, LLC is a "leading provider of contract cleaning and related facilities support services to retailers and commercial facilities in North America. "Vision & Values," http://www.kbs-clean.com/About-KBS.aspx (last visited December 31, 2014). Defendant is headquartered in Maumee, Ohio.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to this claim occurred in this District.

## STATUTORY BACKGROUND

6. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

7. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

8. Congress was particularly concerned about the use of consumer reports in the employment context, and therefore defined the term "consumer reports" to explicitly include background reports procured for employment purposes. *See* 15 U.S.C. § 1681a(d)(1)(B).

9. Through the FCRA, Congress required employers to make a clear and conspicuous written disclosure to employees and job applicants, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes. 15 U.S.C. § 1681b(b)(2).

10. Specifically, Congress made it unlawful for an employer or prospective employer to "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless …a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added). This requirement is frequently referred to as the "stand-alone disclosure requirement."

11. Consumers cannot exercise their substantive rights to ensure that reports about them are accurate and kept appropriately confidential unless they know those reports exist.

12. The stand-alone disclosure requirement helps to empower consumers to exercise their rights because it ensures that employees and job applicants know when consumer reports about them are being generated.

13. Many other provisions of the FCRA are also notice provisions. *See* 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B) (notification of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions of disclosure); § 1681m(a) (notice of adverse action).

14. Like the other notice provisions in the FCRA, the stand-alone disclosure provision puts consumers on notice that a report about them may be prepared. This knowledge enables consumers to exercise a variety of other substantive rights conferred by the statute, many of which work to ensure accuracy, confidentiality, and fairness. 15 U.S.C. § 1681c(a) (limiting temporal scope of information that can be reported); § 1681e(b) (mandating that consumer reporting agencies employ procedures to ensure "maximum possible accuracy" in

reports); § 1681k (requiring consumer reporting agencies that report public record information to employers to either provide notice to the consumer that information is being reported or have "strict procedures" to ensure that information is "complete and up to date"); § 1681i (requiring that consumer reporting agencies investigate any disputed information); § 1681g (requiring that consumer reporting agencies provide a complete copy of the consumer's file to the consumer).

15. Without a clear notice that a consumer report is going to be procured on them, applicants and employees are hindered in their ability to correct errors or other problems with the reports.

16. As discussed below, Defendant routinely violated the FCRA, and consumers' rights, by failing to provide the required stand-alone disclosure to employees and job applicants before procuring consumer reports on them.

## ALLEGATIONS RELATING TO PLAINTIFF

17. Near the end of 2012, Plaintiff applied to work as a janitor for Defendant at an H&M department store in Dearborn, Michigan.

18. Plaintiff received an application packet from KBS. Included in the application packet was a document entitled "Employment Screening Inquiry Form." ("Screening Form," attached as Exhibit A.)

19. The Screening From contains a number of extraneous items that violate the FCRA's stand-alone disclosure requirement.

20. First, the Screening Form contains a liability waiver that purports to release KBS from liability. Specifically, the Screening Form states:

> I hereby generally release and fully discharge KBS, every such governmental agency and every such Prior Company from and against any and all liability with respect to, or arising from the release or dissemination of any such information for any such purpose.

21. The Screening Form also contains a purported waiver of notice from the applicant, stating that the applicant "waive[s] any further notice with respect to Employers [sic] inquiries, such governmental agencies, such Prior Company's, dissemination of any such report(s)."

22. The Screening Form further has another purported agreement that the applicant's "employment promotion or retention may be determined, in whole or in part, based on report(s) so issued to KBS."

23. The Screening Form was the only document Plaintiff ever received from KBS that related to the fact that KBS was going to procure a consumer report on her.

24. On or about January 9, 2013, KBS requested and procured a consumer report entitled a "Consumer Investigation Report" on Plaintiff from consumer reporting agency, Welliver & Associates ("Welliver"). (Exhibit B.)

25. In December 2014, Plaintiff requested her personnel file from Defendant. In response, Defendant produced an incomplete copy of her personnel

file that is missing several pages. Defendant's response included a complete copy of Plaintiff's report from Welliver. (Exhibit C).

## ALLEGATIONS RELATING TO DEFENDANT'S PRACTICES

26. More than fifteen years ago, the Federal Trade Commission emphasized that including extraneous information, especially a liability waiver, in a disclosure form, as Defendant did here, is a violation of the FCRA. *Letter from William Haynes, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO Accufax Div.* (June 12, 1998), available at 1998 WL 34323756 (explaining that "inclusion of a . . . waiver in a disclosure form will violate Section [1681b(b)(2)(A)] of the FRCA, which requires that a disclosure consist 'solely of the disclosure that a consumer report may be obtained for employment purposes'").

27. Courts that have addressed liability waivers placed in disclosure forms have agreed with the FTC that including such a waiver violates the FCRA's stand-alone disclosure requirement. *Dunford v. American Databank, Inc.*, No. C 13-03829, 2014 WL 3956774 at *6 (N.D. Cal. Aug. 12, 2014) (finding document that contained a liability release to "not consist solely of the disclosure because it added a paragraph exonerating [the defendant]"); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825 at *2 (N.D. Ill. July 17, 2014) (finding inclusion of liability waivers to be "contrary to the express language of the FCRA, which requires a disclosure 'in a document that consists solely of the disclosure'");

*Singleton v. Domino's Pizza*, No. 11-1823, 2012 WL 245965 at *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Reardon v. Closetmaid Corp.*, No. 2:-8-cv-01730, 2013 WL 6231606 at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance").

28. Before Welliver provided reports to Defendant, in accordance with Welliver's standard procedures, Welliver required Defendant to certify that it would comply with the stand-alone disclosure provisions of the FCRA.

29. KBS certified to Welliver that it would comply with the stand-alone disclosure provisions of the FCRA.

30. KBS's inclusion of a provision in the Screening Form stating that the applicant waives all rights to "further notice" demonstrates that KBS knew additional notice might be required.

31. Rather than provide applicants with legally required further notice, KBS chose instead to pretend that the applicants had waived their rights.

32. Defendant did not procure Plaintiff's reports in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

33. Upon request from Plaintiff, on approximately December 17, 2014 Welliver sent Plaintiff a complete copy of her consumer report procured by KBS. (Exhibit B.)

34. By systematically inserting a liability release and other extraneous information into Plaintiff's and other class members' disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i).

## CLASS ACTION ALLEGATIONS

35. Plaintiff asserts her claims on behalf of the class defined as follows:

All individuals on whom KBS obtained a consumer report for employment purposes in the two years predating the filing of this Complaint and continuing through the date the class list is prepared.

36. Numerosity: The class is so numerous that joinder of all class members is impracticable. Defendant has hundreds of employees, many of whom are members of the class.

37. Typicality: Plaintiff's claims are typical of the class members' claims. The FCRA violations committed by Defendant were committed pursuant to uniform policies and procedures, and Defendant treated Plaintiff in the same manner as other class members in accordance with its standard policies and practices.

38. Adequacy: Plaintiff will fairly and adequately protect the interests of the class, and has retained counsel experienced in complex class action litigation.

39. <u>Commonality</u>: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.

40. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the class on an individual basis. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## CLAIM FOR RELIEF

### *Failure to Provide Stand-Alone Disclosure*

41. Defendant violated the FCRA by procuring consumer reports on Plaintiff and class members without making the stand-alone disclosure required by the FCRA. *See* 15 U.S.C. § 1681b(b)(2).

42. Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other class members. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2), and that Defendant certified that it would comply with 15 U.S.C. § 1681b(b)(2). Further:

    (a) The FCRA was enacted in 1970; Defendant has had over 40 years to become compliant;

    (b) Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

    (c) Defendant knew or had reason to know from its communications with Welliver that Defendant's conduct violated the FCRA;

    (d) Defendant certified to Welliver that it would comply with the disclosure requirements of the FCRA but failed to do so;

(e) Defendant repeatedly and routinely uses the same unlawful documents it provided to Plaintiff with its applicants and employees;

(f) Despite the pellucid statutory text and there being a depth of guidance and Defendant's own acknowledgment that further notice could be required, Defendant systematically procured consumer reports without first disclosing in writing to the consumer *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

(g) By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

43. Plaintiff and the class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff and the class members are also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff and the class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

44. WHEREFORE, Plaintiff, on behalf of herself and the class, prays for relief as follows:

   a. Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

   b. Designating Plaintiff as Class Representative and designating Plaintiff's counsel as counsel for the class;

   c. Issuing proper notice to the class at Defendant's expense;

   d. Declaring that Defendant violated the FCRA;

   e. Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

   f. Awarding statutory damages as provided by the FCRA;

   g. Awarding punitive damages as provided by the FCRA;

   h. Awarding reasonable attorneys' fees and costs as provided by the FCRA;

   i. Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

45. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff and the class demand a trial by jury.

Dated: January 7, 2014

      By:  s/Julie A. Petrik

Julie A. Petrik P47131
Ian B. Lyngklip P47143
**LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC**
24500 Northwestern Highway, Ste. 206
Southfield, MI  48075
(248) 208-8864
Ian@MichiganConsumerLaw.Com

**NICHOLS KASTER, PLLP**
E. Michelle Drake, MN #0387366*
John G. Albanese, MN Bar #0395882*
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
drake@nka.com
jalbanese@nka.com
*(*applications for admission forthcoming*)

**ATTORNEYS FOR PLAINTIFF**